IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. RHODES, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 3:06-156 |
| | ) | |
| SCI-SOMERSET, and GERALD | ) | JUDGE KIM R. GIBSON |
| ROZUM, | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION AND ORDER

**Gibson, J.,**

Now before the Court is the Motion to Dismiss from Defendants SCI-Somerset and Gerald

Rozum, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Document 9. For the reasons set

forth below, the Motion will be granted in part and denied in part.

## I. JURISDICTION AND VENUE

This action was initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.* (hereinafter "Title VII"), 42 U.S.C. § 1983, the First, Fifth, Ninth and Fourteenth

Amendments to the United States Constitution, and the Pennsylvania Human Relations Act, 43 PA.

CONS. STAT. § 951 *et seq.* (hereinafter "the PHRA"). The Court has jurisdiction in this matter under

28 U.S.C. §§ 1331 and 1367(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim for failure to state

a basis on which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a

court "must accept as true the factual allegations in the complaint and all reasonable inferences that can

1

be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). These inferences must be viewed "in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d 1997) (citations omitted). In reviewing a motion to dismiss, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse*). In a § 1983 action, "plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any [Constitutional] right." *Nami*, 82 F.3d at 65. "In considering a Rule 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Id.* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).

Beyond the pleadings, a court "may also consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994) (citations omitted). *See also Yarris v. County of Del.*, 465 F.3d 129, 134 (3d Cir. 2006). "A 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). "[A] defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003) (citations omitted).

2

## III. FACTUAL BACKGROUND[1]

Plaintiff David E. Rhodes (hereinafter "Rhodes" or "Plaintiff"), a male, was a Registered Nurse (hereinafter "R.N.") at the state correctional institute in Somerset, Pennsylvania (hereinafter "SCI-Somerset"). On several occasions, Rhodes discovered a female subordinate, Beth Sterner (hereinafter "Sterner"), a Licensed Practical Nurse (hereinafter "L.P.N."), in a sexually suggestive position with Ed Meyers, a male Corrections Officer, while at work. On other occasions, Rhodes found Sterner using a work phone to conduct personal conversations with men. According to the complaint, Meyers was not the only Corrections Officer with whom Sterner was caught, and Sterner was not the only nurse engaged in this behavior. For instance, female nurses repeatedly left open automatically locking doors to allow male Corrections Officers entry into the Medical Department for romantic visits, which compromised the safety and security of the Medical Department. Moreover, in exchange for sexual favors, female nurses were able to avoid some prison security measures and avoid their work. At one point, Sterner and another female nurse conducted a conversation while on duty about lap dancing and discussed installing a pole at their work station so that they could work on dance moves. Rhodes claims that the female nurses expected him to allow this behavior and perform their work for them, as well as his own.

Rhodes reprimanded Sterner and spoke to one of Sterner's friends and coworkers, L.P.N. Karen Kennedy (hereinafter "Kennedy"), about events in the Medical Department. Rhodes also made complaints to the daytime Registered Nurse Supervisor (hereinafter "R.N.S.") and SCI-Somerset

---

[1] Unless otherwise indicated, the facts are taken from Plaintiffs' Complaint and any consistencies between the Parties' filings. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the Parties.

3

Administrators Joe Gilmore and Joe Rollins (hereinafter "Gilmore" and "Rollins," respectively). Despite these repeated attempts to correct the situation, the misbehavior continued. Moreover, Plaintiff sometimes found himself being reprimanded. For instance, Rhodes' complaints to the R.N.S. only resulted in retaliation against him from those he was reporting, as well as SCI-Somerset management personnel who allowed this behavior to continue.

Rhodes alleges that he endured an increasingly hostile work environment as retaliation for his complaints. Corrections Officers and security staff are the ultimate supervisors in emergency situations. Prison employees are subject to pat down searches at any time, must abide by emergency rules, and have to report in and out to get through locked doors. Rhodes alleges that these restrictions were used against him. For example, Rhodes faced delays in the opening of automatic locking security doors and in bad weather was forced to stand and wait outside when the gates did not open for him in a timely manner. Rhodes has been plagued with "hang up" phone calls at work and has been intentionally delayed when attempting to timely respond to emergency situations. Rhodes claims that he is effectively being prevented from performing his duties. He has reported some of this behavior to the main security office, but alleges that management has not taken corrective action.

Rhodes also claims that SCI-Somerset knew about the sexual behavior occurring at the workplace, permitted this behavior by failing to take corrective action, and retaliated against him for complaining. His overtime pay has been improperly withheld and he was the subject of a retaliatory sexual harassment claim that led to a Pre-Disciplinary Conference (hereinafter "PDC"). Rhodes believes that SCI-Somerset does not adequately support his efforts to remedy the situation, and avers that his attempts to discipline female subordinates end up being manipulated by his supervisors in order

4

to justify taking disciplinary action against him.

As a prerequisite to bringing this lawsuit, Rhodes first filed with the Equal Opportunity Employment Commission (hereinafter "EEOC") a charge of discrimination on January 5, 2006 (hereinafter "First EEOC Charge"). Document No. 12-2. Rhodes complained that since October 2003 he has been harassed and discriminated against, has suffered a hostile work environment and disparate treatment due to his gender, has been sexually harassed, and was the subject of retaliation for his complaints of the same. Based on this charge, the EEOC issued a right-to-sue letter dated April 12, 2006. Document No. 9-2. Affording Rhodes a three-day mailing presumption, he received the letter on April 15, 2006.[2] On July 17, 2006, ninety-three days after the right-to-sue letter was received, Plaintiff filed this present complaint, alleging violations of Title VII of the Civil Rights Act against SCI-Somerset (Count I), and claims against SCI-Somerset and Rozum under 42 U.S.C. § 1983 (Count II) and the PHRA (Count III). Document No. 1, ¶¶ 11-36. Rhodes claims that as a direct and proximate result of the conduct of the Defendants, he has suffered and continues to suffer (a) mental anguish, depression, and emotional strain; (b) loss of income and benefits; (c) deprivation of ordinary pleasures of life; (d) pain and suffering caused by the almost daily exposure to hostile work environment during his employment at SCI-Somerset; (e) loss of sleep, stress, and severe anxiety; (f) humiliation and embarrassment; and (g) a career that has been curtailed and sabotaged. *Id.* at ¶¶ 16(a)-(g), 35(a)-(f), 41-42. Rhodes is requesting that Defendants be permanently enjoined from unlawful harassment and discrimination on the basis of gender and that this Court issue declaratory judgments that such

---

[2] The Supreme Court has held that receipt of a right-to-sue letter is presumed to occur three days after its issuance. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 and n. 1, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) (citing FED. R. CIV. P. 6(e)).

discrimination and harassment are unconstitutional. Rhodes also requests actual and consequential

damages for any lost pay and benefits; compensatory damages for pain, suffering, emotional distress,

and humiliation; punitive damages in an amount sufficient to punish Defendants and deter similar

conduct; nominal damages; and costs, fees, and any further relief this Court deems proper. *Id.* at ¶¶

19(a)-(h), 36(a)-(h), 43(a)-(g).

In addition to filing the present complaint with this Court, Plaintiff simultaneously filed a second

charge against Defendants with the EEOC (hereinafter "Second EEOC Charge"). Document 12-3. The

EEOC issued a second right-to-sue letter on August 25, 2006. Document 12-4. Since receiving this

second right-to-sue letter, Rhodes has neither filed an amended complaint nor requested leave of court

to do so.

## IV. ANALYSIS

### A.  Title VII

The United States District Court for the Eastern District of Pennsylvania has succinctly

summarized the applicable deadlines for Title VII suits in federal court:

> As a prerequisite to filing suit in federal court under Title VII, a plaintiff must first
> file a charge of discrimination with the Equal Employment Opportunity Commission
> and must receive from the EEOC a right-to-sue letter. 42 U.S.C. § 1983 2000e-
> 5(f)(1); *Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3d Cir. 1990).
> The plaintiff then has ninety (90) days from the date on which he or she receives the
> letter to file a civil action in federal court. *Mosel v. Hills Dep't Store*, 789 F.2d 251,
> 253 (3d Cir. 1986) (holding plaintiff's complaint untimely because it was filed 91
> days after receipt of right-to-sue letter). It is presumed that the date of receipt of a
> right-to-sue letter is three days after its mailing. *See* FED. R. CIV. P. 6(e); *Baldwin
> County Welcome Ctr.*, 466 U.S. 147, 148 n.1, 104 S. Ct. 1723, 1724 n.1, 80 L. Ed.
> 2d 196, 200 n.1 (1984). "The ninety-day filing period acts as a statute of limitation
> in Title VII cases and cannot, in the absence of equitable considerations, be extended
> even one day." *Montecalvo v. Trump's Taj Mahal Casino*, No. 97-3876, 1997 WL

786985, at *1, 1997 U.S. Dist. LEXIS 19199, at *3 (E.D. Pa. Nov. 26, 1997) (citing *Mosel*, 789 F.2d at 253; *Hicks v. Arthur*, 843 F. Supp. 949, 956 (E.D. Pa. 1994)).

*Griffith v. Phila. Prison Sys.*, No. 99-6338, 2001 U.S. Dist. LEXIS 11511, at *5 (E.D. Pa. May 18, 2001). The circumstances that might warrant equitable tolling are:

> when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, where the court has misled the plaintiff into believing that she had done everything required of her . . . . when the defendant has actively misled the plaintiff[,] when the plaintiff "in some extraordinary way" was prevented from asserting her rights[,] or when the plaintiff timely asserted her rights in the wrong forum.

*Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citations omitted).

Rhodes filed the First EEOC Charge on January 6, 2006. The EEOC issued a right-to-sue letter for the January 6 charges on April 12, 2006, *see* Document 9-2, and, affording Rhodes the three-day mailing presumption, he received the letter on April 15, 2006. Upon receiving the right-to-sue letter, Rhodes had ninety days to file a complaint in federal court based on the First EEOC Charge. Rhodes' deadline expired on July 14, 2006; he filed the present complaint three days later, on July 17, 2006.

Rhodes does not dispute that his complaint was filed beyond the ninety day deadline for any lawsuit pertaining to the First EEOC Charge. Document 12, pp. 4-5. Rather, he argues that the procedural defect is excused because the Second EEOC Charge is so closely related to the First EEOC Charge. His complaint is thus based on the allegations in the Second EEOC Charge, on which he eventually received a right-to-sue letter on August 25, 2006. *Id.* at pp. 4-6.

In general "[t]he receipt of a right to sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." *Burgh v. Borough Counsel of Montrose*, 251 F.3d 465, 470 (3d Cir. 2000) (citing *Anjelino v. New York Times*

*Co.*, 200 F.3d 73, 93 (3d Cir. 1999)).  However, Plaintiff is correct that the issuance of a right-to-sue

letter is not a jurisdictional prerequisite to a Title VII action.  *See Robinson v. Dalton*, 107 F.3d 1018,

1021 (3d Cir. 1997) (citations omitted).  "While the attainment of a right-to-sue letter . . . from the

EEOC is a condition precedent to filing Title VII [suits], the failure to obtain notice of the right to sue

is a curable defect."  *Tlush v. Mfrs. Res. Ctr.*, 315 F. Supp 2d 650, 654-55 (E.D. Pa. 2002) (citing

*Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984); *Jones v. Am. State Bank*, 857 F.2d

494, 500 (8th Cir. 1988)).  In other words, the condition precedent can be satisfied after a federal

complaint is filed.  *Id.* at 655 (citing *Gooding*, 744 F.2d at 358; *Molthan v. Temple Univ.*, 778 F.2d 955,

960 (3d Cir. 1985)).  If the Court was concerned that Rhodes had not exhausted his administrative

remedies before filing his complaint on July 17, 2006, the subsequent issuance of a right-to-sue letter

on August 25, 2006, might allay any fears of procedural default.

The issue, however, does not relate to exhaustion, but rather to timeliness.  Simply restating

time-barred claims does not cure the procedural defect of failing to file a timely complaint.  "Otherwise,

a party could easily circumvent the limitation requirement by filing successive charges alleging the same

wrongdoing."  *Anderson v. Consol. Rail Corp.*, No. 98-6043, 1999 U.S. Dist LEXIS 13376, at *5 (E.D.

Pa. Aug. 25, 1999).

For the most part, the factual allegations made in the Second EEOC Charge are encompassed

within the First EEOC Charge.  In the latter, which covered events that occurred between November

2003 and June 2005, Rhodes made general allegations about the inappropriate behavior of the female

staff, their refusal to take directions from him, and the ongoing sexual harassment, threats, and

retaliatory behavior that he suffers.  Document 12-2.  The majority of the allegations made in the

8

Second EEOC Charge, which covered events from prior to October 2003 through June 2006, are simply specific examples of the general behavior described in the First EEOC Charge. *See* Document 12-3. For instance, Rhodes described individual instances where he felt Corrections Officers taunted him with sexually charged comments and recounted specific examples of Sterner's inappropriate behavior in 2003. Document No. 12-3, pp. 1-2. The Second EEOC Charge also detailed several other incidents throughout 2003, 2004, and 2005 when Corrections Officers were caught with female nurses in unauthorized areas, the numerous occasions when nurses engaged in actions that compromised the safety and integrity of the medical staff, and the manner in which Plaintiff's disapproval led to retaliation against him. Rhodes alleged that the female nurses were permitted to ignore various security protocols as a *quid pro quo* exchange for engaging in this misbehavior with the Corrections Officers and that this illicit activity was widespread and ongoing. *Id.* at 3. According to the Second EEOC Charge, the female nurses wanted Rhodes to acquiesce to this behavior, threatening retaliation against him if he reported the behavior. *Id.* The Second EEOC Charge also discussed in detail how his reports of this misconduct were ignored, how his own corrective actions were frustrated, and how, as a result of his efforts, he was the target of retaliation from Sterner, Corrections Officers, and other SCI-Somerset employees. *Id.* at 2. The alleged retaliation included a false sexual harassment claim, threats to Rhodes' physical safety, destruction of his property, obstruction of his job performance, and withheld overtime pay. *Id.* at 3-4, 7-8.

Nearly the entirety of Rhodes' Second EEOC Charge simply elaborated on the wrongdoing alleged in the First EEOC Charge. As Plaintiff himself concedes, he did not file the complaint *sub judice* within ninety days of receiving his first right-to-sue letter. Moreover, while the statute of

9

limitations for filing a Title VII claim is subject to equitable tolling, Rhodes does not contend, nor can

the Court infer from the record, that any of the factors that warrant equitable tolling are present in this

case. Rhodes is therefore time-barred from litigating the allegations contained in the First EEOC

Charge. Simply offering greater detail in a subsequent administrative charge will not revive time-barred

claims; Rhodes cannot circumvent the ninety-day filing requirement by restating his allegations to the

EEOC in a different manner. Thus, to the extent this lawsuit is predicated on allegations in the Second

EEOC Charge essentially identical to those in the First EEOC Charge, it cannot survive.

However, Rhodes' Second EEOC Charge also alleged behavior that occurred after January 6,

2006, the date he filed the First EEOC Charge. Document 12-3, pp. 9-10. For instance, during an April

6, 2006, employee evaluation, supervisor Gerald Puskar allegedly lowered Plaintiff's performance

ratings in retaliation for Rhodes' previous reports of sexual harassment and retaliation. *Id*. at 9. While

such conduct may be related to the ongoing pattern of sexual harassment and retaliatory actions

described in the First EEOC Charge, it may also constitute a fresh act of intentional discrimination

distinct from previous conduct. *Cf. Ledbetter v. Goodyear Tire & Rubber Co.*, ___ U.S. ___, 127 S.

Ct. 2162, 2169, 167 L. Ed. 2d 982 (2007) (noting that each act of intentional discrimination represents

a "fresh violation" of Title VII that extends the limitations period for filing an administrative charge).

Moreover, construing the allegations in a light most favorable to Rhodes, any discriminatory conduct

that occurred after the First EEOC Charge was filed may trigger Title VII's retaliation provision, 42

USCS § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against

any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner

in an investigation, proceeding, or hearing under this title."). Rhodes' allegations of discrimination that

occurred after January 6, 2006, are thus not untimely. Assuming Plaintiff has complied with all other applicable procedural requirements, he may therefore pursue federal litigation on the basis of those claims.

Title VII plaintiffs need not exhaust their administrative remedies when allegations of discrimination are fairly encompassed within previously exhausted claims. *Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997) (citing *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984). However, any exhaustion defect that may have existed with regard to Rhodes' Second EEOC Charge was cured when the EEOC issued a right-to-sue letter in August 2006. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (holding that possession of a right-to-sue letter is not a jurisdictional prerequisite to a Title VII action); *Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985) (suggesting that the right-to-sue letter need only issue prior to trial); *Tlush v. Mfrs. Res. Ctr.*, 315 F. Supp 2d 650, 654-55 (E.D. Pa. 2002) (finding that the issuance of a right-to-sue letter can cure the procedural defects of a previously filed federal complaint where the letter is received prior to trial and the defendant is not prejudiced). It is therefore immaterial whether the fresh violations alleged in the Second EEOC Charge are fairly encompassed by the investigation stemming from the First EEOC Charge. Furthermore, Defendants' failure to challenge the new allegations of the Second EEOC Charge constitutes a waiver of that defense. *Communs. Workers of Am., Local 1033 v. N.J. Dep't of Pers.*, 282 F.3d 213, 216-17 (3d Cir. 2002). Rhodes may therefore proceed with his Title VII allegations to the extent they are based on conduct that occurred after January 5, 2006.

## B.      Section 1983

The Eleventh Amendment preserves within the federal judiciary the immunity from suit that

11

states enjoy by virtue of their sovereignty. *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 297,

117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997).  The immunity is subject to the state's waiver authority,

Congress' abrogation powers, and the principle first articulated in *Ex parte Young*, 209 U.S. 123, 28

S. Ct. 441, 52 L. Ed. 714 (1908).  *Wheeling & Lake Erie Ry. v. PUC*, 141 F.3d 88, 91 (3d Cir. 1998).

Pennsylvania has not waived its Eleventh Amendment protection.  43 PA. C.S. § 8521(b) ("Nothing .

. . shall be construed to waive the immunity of the Commonwealth from suit in Federal courts

guaranteed by the Eleventh Amendment to the Constitution of the United States.").  Moreover, although

42 U.S.C. § 1983 does permit recovery from "[e]very person who, under color of [state law] subjects

. . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws," nothing about the statute suggests that Congress' general intent

was to abrogate sovereign immunity.  *Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 1147, 59 L.

Ed. 2d 358, 369 (1979).  Thus neither states, state agencies, nor state employees sued in their official

capacities qualify as "persons" under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 109

S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

However, the *Young* doctrine allows "suits against individual state officers for prospective

injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's*

*Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).  Additionally, § 1983 enables

civil rights claimants to seek monetary damages from state officials sued in their personal capacity.

*Hafer v. Melo*, 502 U.S. 21, 31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (holding that state officials

12

sued in their individual capacities are considered persons under § 1983).[3]

The Department of Corrections (hereinafter "the DOC") is an agency of the State. 71 PA. C.S. § 310-1. Thus, the Third Circuit has specifically held that the DOC is not a "person" within the meaning of § 1983 and not subject to suit under that statute. *Curtis v. Everett*, 489 F.2d 516, 521 (3d Cir. 1973). As one of the prisons that compose the DOC, SCI-Somerset is neither a "person" within the meaning of § 1983 nor an official within the *Young* exception. *See Phippen v. Nish*, 223 Fed. Appx. 191, 192 (3d Cir. 2007) (nonprecedential opinion) (upholding decision from the Middle District of Pennsylania that "SCI Waymart is not a 'person' within § 1983"); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (holding that a New Jersey prison was immune from suit under § 1983); *Story v. Mechling*, 412 F. Supp 2d 509, 517 (W.D. Pa. Feb. 1, 2006) (concluding that SCI-Waynesburg is not a person under § 1983 and is therefore immune from suit), *aff'd on other grounds*, 214 Fed. Appx. 161 (3d Cir. 2007). Therefore, Rhodes' federal claims against the prison must be dismissed with prejudice.

Similarly, to the extent that he is sued in his official capacity for monetary damages, neither is SCI-Somerset warden Gerald Rozum a person under § 1983. *Will*, 491 U.S. at 71. However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer*, 502 U.S. at 31. Moreover, even when Rozum is sued in his official capacity, the Eleventh Amendment does not protect the warden from claims for prospective, equitable relief. *Will*, 491 U.S. at 71 n.10.

---

[3] In contrast to his § 1983 claims, Plaintiff's Title VII claims are not subject to the strictures of Eleventh Amendment immunity. According to the Supreme Court, Congress intended for Title VII to abrogate the states' Eleventh Amendment immunity "because the statute made explicit reference to the availability of a private action against state and local governments in the event the Equal Employment Opportunity Commission or the Attorney General failed to bring suit or effect a conciliation agreement." *Quern*, 440 U.S. at 344 (citing, among others, *Fitzatrick v. Bitzer*, 427 U.S. 445, 448 n. 1, 449 n. 2, 452, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976); 42 U.S.C. § 2000e-5(f)(1)).

However, although not barred from proceeding against Rozum, Rhodes is required to plead the state officer's "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). *See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*). A plaintiff can demonstrate personal involvement "through allegations of personal knowledge or of actual knowledge or acquiescence." *Id.* Rozum's name appears infrequently in Rhodes' complaint, which only alleges the former's vicarious involvement as the warden of SCI-Somerset. Document No. 1, ¶¶ 9, 21, 24. Rhodes makes no attempt to specifically connect Rozum with any of the alleged discriminatory behavior and practices. He does not plead, nor can this Court infer, any facts that would support a conclusion that Rozum was personally involved in, or somehow knew about and passively allowed, the alleged discrimination. Therefore, Count II must be dismissed against Rozum in its entirety. *See Evancho*, 423 F.3d at 353-54 (upholding a District Court's dismissal of a § 1983 claim against a state official because the plaintiff failed to plead facts establishing a state official's personal involvement in the alleged unconstitutional conduct).

## C.    State Law Claims

"The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252, 267 (1996) (internal and other citations and quotations omitted). In Count III of his complaint, Rhodes alleges that Defendants engaged in unlawful employment practices in violation of the PHRA. Document No. 1, ¶ 39. Rhodes

14

does not specify the Defendants against whom the PHRA claim is asserted. With regard to SCI-Somerset, there is no question that the Pennsylvania DOC and the prisons that compose it are state agencies. *Story*, 412 F. Supp. 2d at 517. While the PHRA permits suits against the Commonwealth and its agencies in state court, "[t]he waiver does not, however, apply to state defendants, including state officials sued in their official capacities for retrospective monetary relief, when a PHRA claim is made in federal court." *Lewis v. Commonwealth of Pennsylvania*, No. 06-1162, 2007 U.S. Dist. LEXIS 34470, at *7 (W.D. Pa. Apr. 5, 2007) (citing 43 PA. C.S. § 8521(b)). *See also Dill v. Pennsylvania*, 3 F. Supp 2d 583, 587-88 (E.D. Pa. 1998) (finding that the PHRA does not waive the Commonwealth's immunity from suit in federal court). The Court must therefore dismiss Count III to the extent it seeks recovery from either SCI-Somerset or Rozum in his official capacity.

According to 43 PA. C.S. § 955(e), "any person, employer, employment agency, labor organization or employee, [may not] aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. . . ." Courts have thus held that an individual defendant can be held liable under the PHRA in his personal capacity if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's discriminatory practices. *See, e.g., Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Marion v. City of Philadelphia*, 161 F. Supp 2d 381, 388 (E.D. Pa. 2001); *Cohen v. Temple Physicians, Inc.*, 11 F. Supp 2d 733, 737 (E.D. Pa. 1998) ("[I]ndividual employees are not to be held liable . . . unless a supervisory employee can be shown to have aided and abetted the employer's discriminatory actions in violation of the PHRA."). As discussed previously, Rhodes fails to allege how, if it all, Rozum was involved in the discrimination against him. Because "the instant complaint is devoid of any allegations

15

from which this Court could conclude that [Rozum] . . . aided, abetted, incited, compelled or coerced"

SCI-Somerset to engage in a long standing pattern of sexual harassment and retaliation against Plaintiff,

Rhodes' PHRA claim against Rozum must also be dismissed in its entirety.

## V. CONCLUSION

Based on the foregoing, the Court must deny Defendants' motion to dismiss to the extent that

it attacks those portions of Rhodes' Title VII claim against Rozum that are predicated on events that

allegedly occurred after January 6, 2006. The Court will grant the motion in all other respects.

An appropriate Order follows

**AND NOW**, this 21st day of August, 2007, upon consideration of Defendants' Motion to Dismiss (Document No. 9), **IT IS HEREBY ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. Specifically, the Motion is denied to the extent that it challenges Plaintiff's Title VII claim based on conduct that occurred on or after January 6, 2006. The Motion is granted in all other respects and the Court hereby dismisses the following: Plaintiff's Title VII claim to the extent it is based on conduct that occurred prior to January 6, 2006; Plaintiff's § 1983 and PHRA claims against Defendant SCI-Somerset; and Plaintiff's § 1983 and PHRA claims against Defendant Gerald Rozum.

**IT IS FURTHER ORDERED** that in accordance with the foregoing Memorandum Opinion, Plaintiff is granted leave to amend his § 1983 and PHRA claims against Defendant Gerald Rozum. Any amended complaint must be filed within twenty (20) days of the date of this Order.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**

17